Sweet *v.* Tinslar.

[ALBANY GENERAL TERM, September 16, 1867. *Miller, Ingalls* and *Hogeboom,* Justices.]

SWEET *vs.* TINSLAR.

An action will not lie to compel the defendant to render an account of his receipts and expenditures, and of his transactions, and to convey to the plaintiff real estate which he holds under a trust agreement entered into for the benefit of the plaintiff; where it appears that the object of such agreement was to prevent a creditor of the plaintiff from enforcing and collecting a judgment and demands held against him, and that it was designed to hinder and delay such creditor in the collection of a judgment already in existence, and of other judgments which might be thereafter rendered.

Such a transaction—where the instrument shows, on its face, that its object and effect was to prevent, at least temporarily, the enforcement of the creditor's demands, and to obstruct and hinder their collection—is void, and in violation of the statute prohibiting such conveyances or assignments of property; and the parties to it are liable to indictment, and punishable for a misdemeanor; and upon no legal principle can it be upheld.

An agreement of that nature is fraudulent in point of fact, and in law; and as fraud vitiates all contracts, the court will not lend itself to aid either party in its enforcement. Nor will it assist one of them by directing an accounting and a conveyance of real estate, by the other.

The doctrine is well settled that a court of equity will not set aside an agreement intended to defraud third parties, as between the parties themselves.

APPEAL from an order made at a special term, sustaining a demurrer to the complaint.

*Geo. Gould*, for the plaintiff, appellant.

*M. I. Townsend*, for the defendant, respondent.

*By the Court*, MILLER, J.   It is with some reluctance that I have arrived at the conclusion that the demurrer to the plaintiff's complaint, in this action, must be sustained. The action is brought to compel the defendant to render an account of his receipts and expenditures, and of his transactions, and to convey to the plaintiff certain real estate which he held under a trust agreement, which was entered into for the benefit of the plaintiff.   The object of this agreement appears to have been to prevent a creditor of the plaintiff from enforcing and collecting a certain judgment, and demands held against him, according to the ordinary course of legal proceedings.   It was evidently designed to hinder and delay the creditor in the collection of a judgment already in existence and of other judgments which the agreement stated might be rendered.   It is true the instrument itself indicates that the plaintiff supposed that he had equitable claims against these demands, and perhaps it may be justly said simply intended to prevent injustice and to secure such an equitable adjustment of his demands against the creditor as was proper between them, but the face of the instrument shows with great distinctness that its object and effect was to prevent, at least temporarily, the enforcement of the creditor's demands and to obstruct and hinder their collection.   It is quite apparent that such an agreement was void, and in violation of the statute prohibiting such conveyances or assignments of property.   (2 *R. S.* 137, § 1.)   The parties to it were liable to indictment, and punishable for a misdemeanor, (2 *R. S.* 690, § 3;) and upon no legal principle can it be upheld. It was fraudulent in point of fact, and in law ; and as fraud

Sweet *v.* Tinslar.

vitiates all contracts, the court will not lend itself to aid either party in its enforcement.

The doctrine is well settled that a court of equity will not set aside an agreement intended to defraud third parties, as between the parties themselves. The rule is laid down by the chancellor, in *Bolt* v. *Rogers*, (3 *Paige*, 157 :) "Wherever two or more persons are engaged in a fraudulent transaction to injure another, neither law or equity will interfere to relieve either of those persons, as against the other, from the consequences of their own misconduct." (*See also McClure* v. *Purcell*, 3 *A. K. Marsh*, 474; *Niver* v. *Best*, 10 *Barb*. 369; *Nellis* v. *Clark*, 4 *Hill*, 424; *St. John* v. *Benedict*, 6 *John. Ch.* 111; 3 *Barn. & Ald.* 369; *Cowen & Hill's Notes*, 1448.)

If we apply the rule laid down to the case at bar, I do not see how the plaintiff's action can be maintained. I am not aware of any exception which authorizes a variation from the general principle enunciated, in a case like this. And as much as it might be desirable to compel the defendant to do justice, and to render an account of his transactions, as in fairness and honesty he should do, it is unfortunate that the plaintiff has placed himself in an attitude which precludes any interposition in his behalf. The rule was adopted for wise and good purposes, and, as a measure of public policy is a warning to all parties who seek to cover up or dispose of their property for fraudulent purposes, and they must do so without the expectation of aid from the court, and at the peril of being defrauded by the betrayal of confidence by the one whom they have made a *particeps criminis* in the fraud which they have thus attempted to practice.

It is said that when a technical rule would commit a greater fraud than the one alleged against the contract, the court is not bound to follow it, but will do equity be-

tween the parties. No authority is cited to show that the general rule laid down can be departed from, and I do not think that any such exception can be invoked to relieve the plaintiff where he has attempted to commit a fraud and entered into a contract which is fraudulent upon its face. If it were so, it would be quite difficult to discriminate as to the cases where the exception should be applied, as most of those cases where confidence is reposed are of a character where injustice is frequently done and the rights of parties seriously affected by its betrayal.

It is also urged that the rule was not intended to cover the case of an executed agreement, when no actual fraud was committed or intended. There is nothing in the case to show that no fraud actually was committed, as we can only consider it as presented by the papers. Nor can we form any judgment as to the intention, except what appears from the complaint; and it is evident, as I have already indicated, that the object was a fraudulent one, and such as the statute absolutely inhibited.

While the court should not strain or pervert any legal principle to establish the invalidity, and the fraudulent character, of the contract between the plaintiff and the defendant; and while in fact, as the case stands, it appears evident that the defendant has the plaintiff's property in his possession and has appropriated a portion of it, the court should seek, if possible, to relieve the plaintiff, yet it cannot violate a long established and well settled principle, to do equity between these parties.

It is said by the plaintiff's counsel that there is no reported case where an assignment which might be held void as against creditors was held void as to the duties of the assignee, or his liabilities to fulfill the trust. This is undoubtedly true, but it does not relieve the plaintiff from the application of the principle laid down in the authorities to which I have adverted. If the court will

Sweet *v.* Tinslar.

not aid a party in the enforcement of such a contract, I am unable to discover how they can assist him by directing an accounting, and a conveyance of real estate. There is no difference, in principle, between allowing a party to enforce a fraudulent contract, and thus reap the benefit of it, and in permitting the plaintiff to maintain this action.

If there had been a promise, on the part of the defendant, to render an account, or to pay the plaintiff for moneys received, or an agreement subsequently made, for a valuable consideration, to reconvey the lands, then perhaps the action might he maintainable; but, as it stands, with no such averment in the complaint, I cannot resist the conclusion that the demurrer was well taken.

The order of the special term must be affirmed, with costs, with leave to the plaintiff to amend upon the usual terms.

[ALBANY GENERAL TERM, September 16, 1867. *Peckham, Miller* and *Hogeboom,* Justices.]