## LORINDA B. WORMLEY

*v.*

## CLARK W. WORMLEY.

*Filed at Ottawa May 14, 1881.*

1. DELIVERY OF A DEED—*what constitutes—consent of the grantor necessary.* The delivery of a deed, to be valid, must be with the assent of the grantor. Where a deed has been taken from the possession of the grantor, without his knowledge or consent, and placed in the hands of the grantee, no title to the land described in the deed will pass, for the reason that there has been no valid delivery.

2. ADVANCEMENT—*settlement—presumption.* Where a man purchases real estate, and has the title made to his wife or child, whether the transaction is to be regarded as a settlement or an advancement, is purely a question of intention. The presumption, however, in the first instance, is that the conveyance was intended as an advancement,—but that presumption may be overcome by evidence.

3. HUSBAND AND WIFE—*of the enforcement of contracts as between themselves.* Where a purchaser of land procured the title to be made to his wife, under an agreement on the part of the wife that she would convey to the husband when requested so to do, it was *held*, the contract on the part of the wife to make a conveyance, was of such character that it could be enforced in a court of equity, at the suit of the husband.

4. LACHES—*to prevent the enforcement of an agreement to reconvey land—as between husband and wife.* Certain parcels of real estate having been conveyed

to a married woman, under an agreement, as was alleged, that she should hold the title in trust for her husband, and would convey to him on request, the husband sought, by bill in chancery, to enforce the agreement. The title to the different parcels of the land in controversy, was acquired by the wife at various times,—as late as the years 1869 and 1870. The bill to compel the conveyance to the husband, was filed in 1878. The parties named had lived together as husband and wife during all that time, nothing occurring to indicate that the husband's claim to the property was not fully recognized by the wife, until within the year preceding the filing of the bill, when she refused to make the conveyance on his request, and finally abandoned her home. It was *held*, there was not such delay on the part of the husband in the filing of his bill, as would preclude him from obtaining the relief to which he might otherwise be entitled.

WRIT OF ERROR to the Circuit Court of Kane county; the Hon. HIRAM H. CODY, Judge, presiding.

The complainant and defendant were married in New York, in the fall of 1836, and came to Kendall county, Illinois. When they came to this State they had but little property. The wife had been a teacher, and from her earnings had laid up some money. Shortly after their arrival here, they bought a claim to 80 acres of land, taking the title in the name of the wife. The wife claims that she paid all the purchase money, $100, for this tract, while the husband claims she furnished only $70 and he $30, and that they were to own the same equally.

In 1843 the husband entered in his own name 80 acres, next adjoining the former tract. In 1860 the husband conveyed this tract to one L. C. Breese, the deed to be delivered in case of his death. This deed was delivered by the wife without his assent, and Breese conveyed to her, both of which deeds she placed on record.

On the death of the wife's father, she inherited an interest in his lands in Kane county, and the husband purchased one share in the same. In 1853 or 1854 this was traded to L. C. Breese for 80 acres of land in Sugar Grove, and in 1869, this last 80 acres was sold to William Schaffer for $4800, and the notes and mortgage for the purchase money were given

to the wife, in her name. With this and other money derived from the farms, the lands on Lincoln avenue, in Aurora, and that obtained from Cost, were purchased in the wife's name. This was in 1868 and 1870.

On June 17, 1851, they purchased a lot on Broadway, Aurora, of C. T. Douglas. The husband claims that it was the agreement that the wife should take the title in her own name, but that he was to be the equitable owner of one-half, the wife to hold the same in trust for him.

The property on Lincoln avenue has been improved by building three houses thereon, and the Douglas property has also been improved by building thereon a house, worth $2000 or $3000. These improvements were partially made from the proceeds of the Schaffer farm, and from the rents and profits of the farm lands.

The parties lived together until the year 1877, when the wife left the husband on account of his cruelty, as she claims. This bill was filed by the husband at the February term, 1878, of the Kane circuit court.

The court decreed that the first 80 acres should be divided between the parties, each taking one-half in fee; that the deeds conveying the second 80 acres to the wife be set aside and the land vested in the husband, and that the husband should have one-half interest in fee to the property in Aurora. To reverse this decree the defendant brings the record here by writ of error.

Mr. B. F. PARKS, Mr. M. O. SOUTHWORTH, and Messrs. LELAND & GILBERT, for the plaintiff in error:

Mrs. Wormley, in her answer, sets up the statute of Frauds, and we confidently assert that it presents an absolute bar to his claim and the finding in the decree.

Under the law, as it then stood, the rights of the husband in and to the lands of the wife were the right to the rents and profits during coverture, and tenancy by curtesy in case she died, leaving children. The title remained in her, and

descended to her heirs. 1 Wash. on Real Prop. 311; *Rose* v. *Sanderson*, 38 Ill. 247; *Guthrie* v. *Gardner*, 19 Wend. 414, and cases therein cited; *May* v. *Jenkins*, 15 Ill. 101.

When a husband is free from debt, and purchases property with his own means, and without fraudulent intent has it conveyed to his wife, it will become her own separate property as against him and all the world besides. *Wing* v. *Goodman*, 75 Ill. 159; *Haines* v. *Haines*, 54 id. 74; *Thomas* v. *The City of Chicago*, 55 id. 406.

Wormley testifies that $70 of the money which purchased this 80 acres belonged to his wife, and that he voluntarily placed the title to the same in her, and it does not appear that there was any fraud connected with the transaction, or that he was in debt. This deliberate act on his part was then and forever thereafter binding against him, and whatever may have been his rights as to the rents and profits accruing therefrom, the title remained in her. If he did it on an agreement that she was to hold half of it to his use, he failed to have it put in writing and a trust of that character declared. If he did it upon an "understanding and agreement" between him and his wife in parol, it was an illegal contract,—one that she could not make, and one that can not be considered now. *Streeter* v. *Streeter*, 43 Ill. 155.

Under such circumstances it must be considered as an advancement to the wife, and if that is true, it is beyond the husband's control. Hill on Trustees, marginal pages 97 and 98.

A full discussion in regard to her rights before and after the passage of the act of 1861, will be found in *Martin* v. *Robson*, 65 Ill. 129.

The doctrine of *laches* is set up in the answer, but it is now too late. *Carpenter* v. *Carpenter*, 70 Ill. 464; *Beach* v. *Shaw*, 57 id. 25; *Rogers* v. *Simmons et al.* 55 id. 82.

It can not be a resulting trust as to any one of said tracts, as such trusts are never created by agreement, but usually by the purchase of land with money of one person in the name

of another, without the consent of the owner of the means. *Sheldon* v. *Harding*, 44 Ill. 68; *Holmes* v. *Holmes*, 44 id. 168.

Mr. CHARLES WHEATON, Mr. A. J. HOPKINS, and Mr. N. J. ALDRICH, for the defendant in error:

The deed to Breese having been delivered without the knowledge or consent of the grantor, was of no legal effect, and should be set aside; and the deed from Breese to Mrs. Wormley should be set aside for the same reason, and because it was obtained by fraud.

Delivery is essential to the validity of every deed. *Wiggins* v. *Lusk*, 12 Ill. 132; *Bryan* v. *Wash*, 2 Gilm. 557; *Ferguson* v. *Miles*, 3 id. 358; *Morrison* v. *Kelly*, 22 Ill. 610; *Hulick* v. *Scovil*, 4 Gilm. 159.

And if a deed is not intentionally delivered by the grantor, it can not operate, and has no validity. *Braman* v. *Bingham*, 26 N. Y. 492; *Bowker* v. *Bendekin*, 11 Mess. & Wels. R. 127; 3 Wash. Real Prop. 272, 268; *Rhodes* v. *School District in Gardner*, 30 Me. 110; *Thompson* v. *Conder*, 60 Ill. 247.

When either husband or wife becomes untrue to the other, and by fraud obtains an unjust advantage over the other, a court of equity will as readily afford relief as it will between other parties. *Stone* v. *Wood*, 85 Ill. 603; *Adlard* v. *Adlard*, 65 id. 212.

While it is true that such contracts, at the time these were made, were void at law, they were not always necessarily so in equity, but in many cases they were held valid, and enforced. Whenever equity and good conscience required such contracts to be enforced between them, they were always enforced by a court of equity. *McCartney* v. *Welch*, 44 Barb. 271; *Woodworth* v. *Street*, id. 268; *Wickes* v. *Clark*, 3 Edw. Ch. 58. And a husband may, for a *bona fide* consideration, contract with her for a transfer of property from him to her. *Brooks* v. *Dent*, 1 Md. 523; *Bowie* v. *Stone-*

*street,* 6 id. 418; *Jones* v. *Jones,* 18 id. 46; *Cardiel* v. *Ryder,* 35 Vt. 47.  See, also, *Going* v. *Orns,* 8 Kan. 85; *Livingston* v. *Livingston,* 2 Johns. Ch. 537; *Cotton* v. *Wood,* 25 Iowa, 43.

The presumption that a conveyance taken in a wife's or child's name is an advancement, may be rebutted. *Smith et al.* v. *Strahan,* 25 Tex. 103; *Smith* v. *Strahan,* 16 Tex. 314; Hill on Trustees, 97, and notes; *Stone* v. *Wood,* 85 id. 603.

A deed to a *feme covert,* not describing her as a married woman nor purporting to be for her separate use, is presumed to be *prima facie* a conveyance to the husband and wife in common, and the burden of proof is upon the wife to show that it is her property. *Adams* v. *Knolton,* 22 Cal. 283; *Meyer* v. *Kinser,* 12 id. 247; *Tryon* v. *Sutton,* 13 id. 490; *Alverson* v. *Jones,* 10 id. 9; *Hall* v. *Sayre,* 10 B. Mon. (Ky.) 46.

The doctrine of *laches* does not and can not apply here. In none of the cases above quoted by us was it held that the doctrine of *laches* applied, and in two of the cases, *Bowie* v. *Stonestreet,* 6 Md. 419, and *Cotton* v. *Wood,* 25 Iowa, 43, it was held not to apply.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Clark W. Wormley against his wife, Lorinda B. Wormley, to compel the conveyance of certain lands in Kendall county, and certain town lots situated in the city of Aurora, which property complainant alleges the defendant holds in trust for him. The first tract involved was the east half of the north-east quarter of section 10, town. 37 north, range 8 east of the third principal meridian, the undivided half of which the court decreed defendant should convey to complainant. This land, as appears from the evidence, was originally a part of a settler's claim, consisting of 160 acres, held by one King. As early as 1838, complainant purchased of King his claim, for $50. The other 80 acres he disposed of before the land came into

market, and in 1840 he went to the land office in Chicago and entered the 80 in question in the name of Lorinda B. Wormley, his wife, paying therefor the government price, $1.25 per acre, in whose name a patent subsequently issued.

Thus far there is no dispute between the parties; but in regard to the contract which was made between the parties when the land was entered, and in regard to whose money paid for the land, there is a radical conflict in the evidence. The complainant says his wife furnished $70 of the money and he furnished $30, and an agreement was made that the title should be taken in her name, and she should hold it in trust for him to the extent of one-half interest, which she agreed to convey on request. On the other hand, the defendant testified, in substance, that she furnished the money, $100, to enter the land, which she had earned in New York, before they were married, teaching school; that the entry was made in her name because she furnished the money to pay for the land. She absolutely denies any agreement to convey to complainant any part of the land. The parties, by their joint labor and earnings, improved the land, and resided upon it as a home until a short time before the filing of this bill.

Aside from the fact that the land was assessed in the name of complainant, and proof of defendant's declarations to the effect that complainant owned the farm, there is no other proof bearing on the transaction. We do not regard the proof sufficient to sustain the decree. The title to this land has stood in the name of defendant, of record, unchallenged by complainant for a period of nearly forty years. He concedes that his wife paid nearly three-fourths of the purchase money for the land, when it was originally purchased. Under such circumstances, before a title of such long standing should be impeached, the evidence to produce such a result should be clear and uncontradicted. Such, however, was not the evidence in this record. The complainant swears to one state of facts, and the defendant to another and a different state of facts. If the title to land could be taken from

one and transferred to another on such conflicting evidence, all security in titles to real estate would be at an end. Nor can the loose declarations made by the defendant to different persons, to the effect that complainant owned the Kendall county farm, be held sufficient to set aside a deed of such long standing. If these declarations prove anything, they establish the fact that complainant owns and is entitled to the whole 80-acre tract, which he does not pretend. He only claims an undivided half, and yet the proof, if good for anything, establishes his title to the whole.

This kind of evidence, when introduced with the view to impeach a title to real estate, is weak and unreliable, and should be received and acted upon with great caution. As to this 80-acre tract, we regard the decree erroneous.

We now come to the other 80-acre tract,—the east half of the south-east quarter of section 3, township 37, range 8 east of the third principal meridian,—which was a part of the home farm, and joined the other 80 which we have just considered. This tract of land was entered by complainant, in his own name, on the 15th day of February, 1843, and paid for from his own funds. In October, 1860, complainant, being sick, at the request of his wife deeded this land to one Lysander Breese, a nephew of defendant, and placed the deed among his own papers, with the understanding between him and his wife, that in case of his death the deed should then be delivered to Breese, who should convey to the defendant. The complainant did not, however, die, as was anticipated, but, notwithstanding this, in September, 1861, the defendant took the deed from his papers, and carried it to Breese, who, at her request, made a conveyance of the land to her, and she then placed both deeds on record.

The court, on the hearing, set aside these two deeds, and, as we think, properly. The deed from complainant to Breese was never *delivered*, and hence no title passed. It is true, the deed was passed into the hands of Breese, the grantee, but this was not with the knowledge or consent of the grantor,

and hence his rights were not affected. The delivery of a deed, to be valid, must be with the assent of the grantor. Where, as in this case, a deed is taken from the possession of the grantor, without his knowledge or consent, and placed in the hands of the grantee, no title to the land described in the deed will pass, for the reason that there has been no valid delivery.

This brings us to a consideration of the decree in relation to the Aurora property, which required the defendant to convey one-half of same to complainant.

It appears, from the evidence, that in 1849 complainant purchased a one-fourth interest in a tract of land, consisting of 112 acres, in Sugar Grove, in Kane county, which belonged to the estate of Seneca C. Breese. The defendant also acquired a one-fourth interest in the tract of land, as one of the heirs of Breese. On the division of the land between the heirs of Breese, 56 acres was set off to Wormley and his wife. Subsequently, they traded this 56 acres to L. C. Breese for 80 acres which he owned in Sugar Grove—the title to which was made to the defendant. From rents derived from this land and from the home farm, the property in Aurora, known as the "Lincoln avenue property," was purchased, and title taken in the name of defendant. Afterwards, the 80-acre tract in Sugar Grove was sold for $4800. From the proceeds of this sale the Broadway property, in Aurora, was purchased, in the name of defendant, and the Lincoln avenue property, as well as the Broadway property, was improved with money derived from the sale of the 80-acre tract, last named.

It is quite apparent, from the testimony, that complainant contributed at least one-half of the amount which was invested in the Aurora property in purchasing and improving it. Was the Aurora property intended as an advancement to the defendant? If it was, then, although an equal undivided half of the property was acquired from complainant's own means, he can not recover it back from the defendant.

Where a man purchases real estate, and has the title made to a wife or child, the presumption of law is that the conveyance is intended as an advancement. But that presumption may be overcome by evidence. Perry on Trusts, sec. 147, states the rule, as follows: "Whether a purchase in the name of the wife or child is an advancement or not, is a question of pure intention, though presumed, in the first instance, to be a provision and settlement." See Hill on Trustees, 97; *Smith* v. *Strahan*, 16 Texas, 314; same case, 25 id. 103; *Taylor* v. *Taylor*, 4 Gilm. 303; *Bay* v. *Cook*, 31 Ill. 336.

We have examined the record in this case with much care, and we are satisfied that complainant never intended the Aurora property as an advancement to his wife. At the time the Aurora property was purchased, the defendant was well provided for. The title to 240 acres of valuable land was then in her name, while her husband, the complainant, was only in moderate circumstances, and did not hold much property at the time in his own name. Situated as they then were, it is unreasonable to believe that he would provide so liberally for his wife, to the neglect entirely of himself, when at the time she was well provided for. He testified, and his evidence seems corroborated by other circumstances, that no advancement was intended, but that defendant agreed to hold the title to one-half of the property for him, and convey it at such time as he might request.

But it is said, that a contract of this character, between husband and wife, can not be enforced in a court of equity. Whether a contract from a married woman to her husband, to convey lands, can be enforced in equity, we shall not stop to consider; but where the facts are as here established, there is ample authority for a court of equity to grant relief. *Livingston* v. *Livingston*, 2 Johns. Ch. 537; *Cotton* v. *Wood*, 25 Ia. 43; *Adlard* v. *Adlard*, 65 Ill. 212; *Stone* v. *Wood*, 85 id. 603.

It is, however, contended, that complainant is guilty of *laches*, and on that ground he can not obtain relief. It will

be observed that complainant has been in the possession of the property, and his right to use and possess the same does not seem to have been disputed until a short time before the filing of the bill. He had every reason to believe that defendant would convey to him on request, as she had agreed. Under such circumstances, we do not understand that *laches* can be imputed to complainant.

The decree will be reversed as to the 80 acres of land entered in the name of complainant on the 15th day of February, 1843, and in all other respects it will be affirmed.

*Decree reversed in part and in part affirmed.*