### SLOAN et al. v. MACARTNEY.

(Supreme Court, Equity Term, Erie County. January, 1908.)

1. FRAUDULENT CONVEYANCES—EVIDENCE—INTENT OF GRANTOR.

In an action by heirs to set aside alleged fraudulent conveyances by their parents, evidence examined, and *held* to show that the conveyances were made in part to hinder and defraud creditors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, § 596.]

2. SAME—TRANSFER INVALID—CONFIDENTIAL RELATION OF PARTIES.

Though a grantor transfers property to a person in whom he has special confidence, for the purpose of defrauding creditors, if the transfer was made upon the advice and solicitation of such transferee, it may be set aside in a subsequent suit by the grantor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, § 529.]

3. SAME—EVIDENCE—INTENT OF GRANTEE—ADVICE OF GRANTEE.

In an action between heirs to set aside an alleged fraudulent conveyance made by the parents of the parties during their lifetime to defendant, evidence examined, and *held* to show that the conveyances were not made upon the advice or solicitation of defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, § 596.]

4. SAME—RIGHTS OF PARTIES—ORIGINAL PARTIES—HEIRS.

As a general rule neither the original parties to a conveyance made to defraud creditors nor their heirs may have such conveyance set aside, the courts leaving them in the position where their unlawful acts have placed them, and hence plaintiffs, who are the daughters and heirs at law of the grantor, may not set aside a conveyance made to defendant, another daughter, to hinder and defraud creditors, where the transfer was not made in reliance upon the advice or upon solicitation of defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, §§ 523–529.]

5. SAME—AGREEMENT TO RECONVEY—EFFECT.

If a conveyance was made to defraud creditors, it may not be set aside by the heirs of the grantor, even though there was a parol agreement between the parties to hold the title for the grantor's benefit.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, §§ 523–529.]

6. TRUSTS—CONSTRUCTIVE TRUSTS—AGREEMENT TO RECONVEY—EVIDENCE.

In an action between heirs to impress certain real estate conveyed to defendant with a trust in favor of plaintiffs, evidence examined, and *held* insufficient to show a parol agreement by defendant to hold the property and reconvey to grantor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, §§ 66–68.]

7. SAME.

Where a deed gives an absolute title to the grantee of property. a trust will not be imposed thereon without clear proof showing a beneficial interest in another, as well as its nature, character, and extent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 68.]

8. SAME—BREACH OF FIDUCIARY DUTY—PAROL EVIDENCE.

Where, through the influence of a confidential relation, a person acquires title to property or obtains an unconscionable advantage of another, courts will impress such property with a trust which will be enforced, unaffected by the statute of frauds.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, §§ 144-146.]

9. DEEDS—EVIDENCE—BURDEN OF PROOF—CAPACITY OF PARTIES.

Where the grantor was suffering from mental weakness at the time of executing the conveyance, so that his mind was not normal, the burden of proof was on the grantee to show the perfect fairness of the transaction and the capacity of the grantor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Deeds, §§ 589, 591.]

10. SAME—EVIDENCE—SUFFICIENCY—INADEQUATE CONSIDERATION.

In an action by heirs to set aside a deed because of the mental incapacity of the grantor, evidence examined, and *held* to show that the grantor was not sufficiently mentally responsible for his acts to sustain a conveyance made upon an inadequate consideration.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Deeds, §§ 638, 639.]

Action by Susan Sloan and another against Agnes D. Macartney to set aside certain deeds, and impress a trust in favor of plaintiffs upon certain real property. Judgment in part for plaintiffs.

Alfred Martin, for plaintiffs.
John H. Brogan and Frank F. Williams, for defendant.

WHEELER, J. This action is brought to have certain real estate impressed with a trust in favor of the plaintiffs. It appears from the evidence that the plaintiffs and the defendant are the daughters and sole heirs at law of George R. Macartney and of his wife, Agnes Macartney, now both dead, and both of whom died intestate. On or about the 23d day of June, 1896, the said George R. Macartney was the owner of a house and lot known as No. 107 Tenth street, in the city of Buffalo, and his wife, Agnes Macartney, was the owner of three other houses and lots on the same street known as Nos. 106, 112, and 113. On the 23d day of June, 1896, the said George R. Macartney executed and delivered to his daughter, Agnes D. Macartney, the defendant in this action, a deed of conveyance of the premises owned by him; and on or about the 29th day of June, 1896, the said Agnes Macartney executed and delivered to the defendant Agnes D. Macartney a deed of conveyance of the three houses and lots owned by her. George R. Macartney died on the 8th day of July, 1896, and his widow, Agnes Macartney, died October 12, 1906. It is alleged on the part of the plaintiffs that these conveyances in each case were made without consideration, and were accepted by the defendant for the purpose and with the intent and upon the agreement that the defendant would hold the title to said property for the benefit of the grantor, and that she

would reconvey the same with the rents and profits thereof to said grantor, his or her heirs or assigns, upon request. In the case of the house and lot No. 107 Tenth street conveyed by the father, George R. Macartney, it is further claimed that at the time of the execution of his deed he was ill and of unsound mind to such an extent that he was incapable of understanding the nature or consequences of his acts, and incapable of making any legal or binding conveyance of his property.

The evidence shows that at the time of the making of the conveyances in question a judgment for $862.44 had been taken against George R. Macartney in favor of one Chilson, and that at the same time another action was pending against Mrs. Macartney, brought by Chilson, which resulted in a judgment against her on the 22d day of January, 1897, for $164.20. The judgment against Mr. Macartney was paid and satisfied on the 23d day of June, 1896, the same day the deed was given by him to Agnes D. Macartney, his daughter. The judgment against Mrs. Macartney was paid and satisfied subsequent to its recovery. It is claimed, however, by the plaintiffs that Mr. and Mrs. Macartney had reason to anticipate other and further demands by Mr. Chilson, growing out of their joint ownership of a lake vessel called the "Burton." The evidence in this case does not disclose what, if any, foundation existed for any such apprehension on their part. Nevertheless it is insisted by the plaintiffs, and this case has been tried on their part upon the theory, that, in order to keep the property conveyed from the demands of Chilson and to hinder and delay him in their collection, the parents of the parties executed the conveyances in question with the understanding and agreement on the part of the defendant to hold the title for their benefit. The testimony on the part of the plaintiffs is to the effect that the defendant subsequently stated to them that, when these financial difficulties arose, Mr. and Mrs. Macartney sent for their nephew, Mr. John Donaldson, and that he advised them to get their property out of their hands as fast as possible; and that, acting upon his suggestion and advice, the deeds in question were given. Mr. Donaldson, on the other hand, was called as a witness for the defendant, and he testified that he drew and took the acknowledgment of these deeds; that he went to see Mr. and Mrs. Macartney in response to their request; that, when the deed from the father was drawn, he stated to Donaldson that his daughter Agnes had in the past loaned him considerable sums of money; that he owed her money then, and he might owe her money in the future, and he wanted to give her the house and lot in question to recompense her for what he did owe her, and what he might owe her in the future; that his other daughters were both happy, and well married, and their husbands could take good care of them, and he wished to give this property to Agnes for what he owed her, and for what she would do for him in the future, and he testified that Mr. and Mrs. Macartney spoke of Agnes taking care of them, and that they did not want Agnes to be teaching school all their lives, and they said that Agnes had agreed to care for them during their lives. About a week later the deed from Mrs. Macartney to Agnes was drawn, and as to that Mr. Donaldson testified that he was requested by Mrs. Macartney to draw the deed, she stating that

she wanted to draw a deed of her property to her daughter Agnes; that he drew the deed and brought it to Mrs. Macartney, who executed it and he took her acknowledgment; and that Mrs. Macartney said she was giving it to Agnes because Agnes had agreed to take care of Mrs. Macartney and "Pa" the rest of their lives, and, that when the deed was delivered to Agnes, he said, "Agnes, your parents have taken care of you. Now you want to take good care of them"—which she promised she would do, and that both parents joined in and said they knew she would do so. It does further appear that at these times or some of them the claims and demands of Chilson were discussed, but Mr. Donaldson denies, in substance, that he advised these conveyances for the purpose of defeating creditors. No other witness testifies to anything which transpired at the time of the execution of these deeds.

The court cannot escape the conviction, when all the testimony and surrounding circumstances are considered, that the conveyances both by Mr. and Mrs. Macartney were made with the purpose and intent of at least hindering and delaying creditors, and of making at the same time some provision for themselves in their declining years, with the expectation and doubtless with the understanding and agreement on the part of the grantee that from the rents and profits of these places she would provide and care for the grantors so long as they should live. Coupled with these motives and efforts to make provision for themselves was also the wish to make some suitable provision for their daughter Agnes. The other daughters were happily married, and had husbands who provided them with comfortable homes. Their future was assured. The daughter Agnes was unmarried. She was a teacher in the public schools. She was living at home with her parents, caring for them and looking to their comfort. It was a most natural thing for her parents, considering her dependent condition and the care which she was to give them, to desire to specially provide for the defendant. That such was in fact the purpose, in part at least, of these conveyances, is sustained by the testimony of Mrs. Mould, apparently a candid and disinterested witness, who testified that Mrs. Macartney told her shortly before her death that:

"Agnes' [her daughter] did not need to go back teaching school if she did not want to, as the houses all belong to her."

Another most important circumstance cannot be overlooked in the disposition of this case, and that is that for 10 years after the execution of the deeds in question the title to the properties were permitted to remain in the defendant, and her right and ownership in them remained apparently unchallenged. If it were the original purpose and intent of the grantors that the defendant should only remain the holder of the nominal title for the purpose of keeping the property from their creditors, with an agreement to reconvey, it seems strange that, after those dangers had long been passed, she should have been permitted without apparent protest to have continued to hold the property in her own name. The natural thing would have been for Mrs. Macartney to have procured a reconveyance of the properties.

This was not done, and it tends to confirm the contention that no right to a reconveyance existed.

Assuming, however, for the purpose of the argument, that the only object and purpose of the conveyances of the properties in question was to hinder and defraud creditors, as claimed by the plaintiffs, and that there was some tacit or even express agreement on the part of the defendant to hold the title for the benefit of the grantors, or an agreement to reconvey when requested, it would be very difficult upon principle to sustain a right of recovery in this action upon such grounds. The general rule of law is that courts of equity will refuse relief to set aside conveyances made for the purpose of defrauding creditors. If parties participate in such a fraudulent scheme, the courts will leave them to the consequences of their own unlawful acts, and refuse them assistance in restoring property parted with under such circumstances. Robertson v. Sayre, 134 N. Y. 97, 31 N. E. 250, 30 Am. St. Rep. 627; Renfrew v. McDonald, 11 Hun, 254; Manny v. Philips, 1 Paige, 472; Bolt v. Rogers, 3 Paige, 154; Garfield v. Hatmaker, 15 N. Y. 475. "This rule is a penalty imposed by the law for the prevention of frauds and the protection of subsequent purchasers." The heirs at law of the original parties to the transaction stand in no better position in this regard than the parties themselves. Robertson v. Sayre, 134 N. Y. 99, 31 N. E. 250, 30 Am. St. Rep. 627; Jackson v. Garnsey, 16 Johns. 189. There appears to be an exception to the general rule where a lawyer, in whom his client reposes trust and confidence, advises his client to make such a conveyance to himself. Such were the cases of Ford v. Harrington, 16 N. Y. 285, and Freelove v. Cole, 41 Barb. 318. The doctrine of the rule has been extended even to the case of a financial adviser upon whose counsel the grantor has been accustomed to rely and act. Ingersoll v. Weld, 103 App. Div. 554, 93 N. Y. Supp. 291. In the case of Boyd v. De La Montagnie, 73 N. Y. 498, 29 Am. Rep. 197, the rule was also applied to the case of a gratuitous transfer of property from a wife to a husband, induced in part by representations on his part that she was liable for a debt, for which she, in fact, was not liable, and made in the belief that the effect of the transfer would be to delay the creditors or in some way save the property. As was said in Ingersoll v. Weld, 103 App. Div. 554, 93 N. Y. Supp. 291:

"The test is whether his advice operated upon the mind to the extent of controlling it in making the transfers."

If we apply that test, then, to the facts in this case, we find they fall far short of bringing it within the exceptions to the general rule which leaves parties to a fraudulent conveyance to the consequences of their own acts. There is an entire absence of any evidence showing, or tending to show, that the defendant Agnes D. Macartney counseled or advised the transfers or that the grantors, her parents, were influenced in any way by her opinions or by any solicitations on her part. On the contrary, what little evidence there is bearing on the subject is that, when Chilson's claims were pressing, their nephew, John Donaldson, was sent for, and the plaintiffs contend that it was upon his suggestion and advice the property was deeded to the defend-

ant; and it is argued by plaintiff's counsel but for the bad advice of Mr. Donaldson the deeds in question would never have been made. Be that as it may, it is no evidence that what was done was procured by or through the defendant.

It is true that there did exist between the defendant and her parents certain relations of trust and confidence; but, as was said in Renfrew v. McDonald, 11 Hun, 256:

"The case represented by the complainant is a bold case of a conveyance of the property in question, with an express intent to hinder, delay, and defraud the creditors of the plaintiff. The allegations that confidential relations existed between the parties, that the defendant was the adviser of the plaintiff in the transaction, and was some time a boarder at the defendant's house, are allegations of character that might truly be made in most cases of such conveyances. The recipient of property with intent to defraud creditors possesses the intimacy and confidence of the fraudulent debtor, and advises the attempted fraud and consents to be the instrument thereof. To allow the grantor in such a case to set aside the grant and be restored to all her parted with for the illegal purpose would be to afford great encouragement to future attempts of that character."

We therefore conclude that the plaintiffs cannot prevail in this action upon the theory that the conveyances in question were made to hinder, delay, and defraud creditors. These considerations end the case, unless it appears that the conveyance by Mr. Macartney was made at a time when he was irresponsible for his acts. So far as Mrs. Macartney is concerned, no such claim is made.

If the transaction was induced and carried through with the intent to hinder, delay, and defraud creditors, it is a matter of no consequence in this case whether there was or was not a parol agreement to hold the title for the benefit of the grantors, or whether or not, but for the presence of this element in the case a constructive trust might be established against the defendant. In this connection, however, this court is bound to say that, eliminating any question of a purpose to hinder, delay, and defraud creditors, the court would not feel justified, from the evidence as presented, in finding an agreement on the defendant's part to hold the naked title in trust for the grantors further than to provide for her parents so long as they lived. Certain facts are proved, which, standing alone and by themselves, might raise a strong suspicion that there was some tacit or secret understanding on the defendant's part to treat the houses and lots conveyed as other than her absolute property. It is quite evident that after these conveyances and during the life of her mother, the defendant gave to her mother a considerable portion of the moneys derived from the rents, and permitted her mother to do or cause to be done in reference to the houses many things by way of repairs and renting and receiving rents, as though she had a personal interest in the properties. On the other hand, it also appears that the defendant and her mother lived together; that the defendant was a school teacher and during school hours was necessarily away from home and unable to give personal attention to every detail of management; that, according to Mr. Donaldson's testimony, the defendant had obligated herself to care for her parents during their lives. These circumstances very greatly impair the force and effect of acts which under other conditions would have a far greater significance.

Some time after her mother's death, the defendant called in her sisters, the plaintiffs in this action, for the purpose of discussing her mother's affairs, and she intimated her purpose of making a certain division of the property received from her mother, subject to certain claims and demands, which she insisted should be first recognized before any division should be made. These claims it appears the plaintiffs indignantly repudiated, who insisted on a division of all the property, including the house and lot deeded the defendant by her father. It appears that a rupture of friendly relations took place then and there; the defendant claiming she there stated she was under no obligations to make any division whatever, and that she would stand on her rights as the plaintiffs insisted they would stand upon theirs. Hence this litigation.

The fact that the defendant purposed to do something for her sisters in this connection is a strong argument for the plaintiffs, but this court cannot, in weighing the force of the testimony, give that fact and circumstance greater effect than the positive and explicit evidence of Mr. Donaldson as to what was actually said and done at the time the deeds in question were executed, corroborated as it is by the testimony of Mrs. Mould as to the declarations made by Mrs. Macartney that the houses belonged to her daughter Agnes, and she would not be required to teach school all her life because of her ownership of these properties. A trust cannot be impressed upon what appears by deed alone to be an absolute title in the defendant, without clear proof showing a beneficial interest in another as well as its nature, character, and extent. Hutchins v. Van Vechten, 140 N. Y. 120, 35 N. E. 446; Wadd v. Hazleton, 137 N. Y. 215, 33 N. E. 143, 21 L. R. A. 693, 33 Am. St. Rep. 707; Van Cott v. Prentice, 104 N. Y. 45, 10 N. E. 257. Those elements are wholly lacking in the evidence produced for the plaintiffs in this action. Courts in proper cases will impress properties with a trust to prevent and redress a fraud, and such trusts will be unaffected by the statute of frauds and will be enforced. The general rule is that where a person, through the influence of a confidential relation, acquires title to property or obtains an advantage which he cannot conscientiously retain, the court to prevent the abuse of confidence will grant relief. Goldsmith v. Goldsmith, 145 N. Y. 318, 39 N. E. 1067; Wood v. Rabe, 96 N. Y. 426, 86 Am. Rep. 640. In the case at bar, however, the preponderance of evidence is against the contention that at the time the deeds were executed and delivered there was any promise or agreement on the defendant's part to hold the title of the properties for the benefit of the grantors beyond caring and providing for her parents during their lives.

There remains, however, for consideration another ground upon which the plaintiffs seek relief as to the house and lot No. 107 Tenth street deeded the defendant by her father, George R. Macartney. It is contended that at the time he executed the deed in question he was mentally incompetent to transact business, and his mind so affected by disease as to render him incapable of making a valid conveyance. Mr. Macartney was at the time of the transaction in question a man of about 70 years. He had been suffering for a considerable time with a peculiar form of diabetes which had greatly impaired his physical powers. The evidence of those who had the best opportunity of observing him seems

to be that it had, to a degree at least, changed his character and general disposition. I think the evidence pretty clearly establishes the fact that he had become more or less changeable and irritable; that he used to get up from his bed and wander about the house in the nighttime, and on occasions was found lying in the bath tub, which he was induced to leave with some difficulty; that the pending action brought against him by Chilson greatly exercised and worried him, and he imagined the suit uncalled for and unjust, and thought it an effort on Chilson's part to get his property away from him. The facts do not seem to have justified his fears or suspicions. He apparently feared approaching poverty. He appears to have become more or less melancholic and morose in his mind, and was given to brooding. This transaction took place on the 23d day of June. He died on the 8th day of July following. The disease from which he was suffering had progressed so far that within a few days after the deed in question was given he took to his bed, and was never up again. The general nature of his disease, its tendency as affecting the mind of the patient, and the nearness of the transaction to the time of death, have impressed the court that, while Mr. Macartney could not perhaps be technically termed insane, nevertheless disease and business troubles so affected his mind and judgment that he could hardly be deemed responsible for his acts.

It is not claimed that any consideration for the conveyance passed at the time of the execution of the deed beyond the dollar expressed, and the money previously advanced by the defendant and the promise to care for him as long as he lived. All these amounts were grossly inadequate consideration when compared with the value of the property. While Mr. Macartney had a perfect right to deed the property to his daughter for nothing, nevertheless, if while so doing he was suffering from such unnatural mental conditions that he was unable to fully and fairly know and appreciate his acts and their consequences, then the defendant ought not to continue to hold the property. The exact nature and extent of the mental impairment of Mr. Macartney is not easily to be determined. It is only fair to say that some of his neighbors and acquaintances observed none. The evidence produced shows a case of mental weakness where the operations of the mind appear to have been far from normal. In such cases the law imposes upon the person receiving the benefit of the conveyance the burden of showing the perfect fairness of the transaction and the capacity of the other party. Pomeroy's Equity Jurisprudence, § 947; Shakespeare v. Markham, 72 N. Y. 400; Cowee v. Cornell, 75 N. Y. 91, 31 Am. Rep. 428; Nutting v. Pell, 11 App. Div. 55, 42 N. Y. Supp. 987. We do not think the defendant in this case has met these requirements. At the same time, we attribute no purpose on her part to defraud her father or her sisters in the transaction, but simply hold that at the time of the giving of the deed by her father we believe he was not entirely mentally responsible for his acts, and, as the consideration was inadequate, we think the transaction should not stand. The fact that the grantor George R. Macartney was not wholly responsible for his acts relieves him from the consequences of having voluntarily deeded away his property to hinder and delay creditors.

These considerations, however, have no application to the case of Mrs. Macartney, and, as to the houses and lots conveyed by her, the transactions are sustained and the grantee held to have acquired an absolute and unqualified title in the premises. As to the parcel No. 107 Tenth street, the same should be declared to be held in trust by the defendant and for the two plaintiffs in this action. An accounting of the rents and profits of this parcel should be had, in which the defendant, of course, should be allowed any and all sums paid by her by way of reduction of the mortgage on said premises, as well as for taxes, repairs, and insurance on the same. As the plaintiffs and the defendant have each partially succeeded in this action, no costs are to be allowed to either party as against the other. Let judgment be entered accordingly.