EMIL SCHMITZ, Respondent, *v.* MARIA SCHMITZ, Appellant.

First Department, December 18, 1931.

*Louis W. Arnold, Jr.*, for the appellant.

*Thomas V. Tozzi*, for the respondent.

MARTIN, J. The plaintiff by this action seeks to impress a trust in his favor upon two parcels of real estate situated at Nos. 1142–1144 Franklin avenue, borough of Bronx, city of New York, now in the name of his wife, the appellant herein, and demands a reconveyance thereof and an accounting with respect thereto during the years the property has been solely owned, managed and controlled by the defendant.

When the parties were married on April 25, 1903, the plaintiff was a ribbon weaver and worked at that business until October, 1911. Thereafter, he conducted a candy and stationery store at No. 3343 Third avenue, borough of Bronx. In 1914 he sold the candy store to his cousin and bought a store at No. 3347 Third avenue for which he paid the sum of $2,300 and conducted it until June, 1929.

Until the parties separated in October, 1925, the defendant was a faithful, hard-working helpmate to the plaintiff. They lived in rooms in the rear of or above the store, and the defendant, in addition to her household duties, regularly helped her husband in and about the business.

The property owned by this couple was accumulated through

the industry, hard work and frugality of both husband and wife, who appear to have toiled and saved, each helping the other during their entire married life, and each from time to time taking a part of the property in his or her name, evidently with the intention that the part so taken should belong to the one in whose name it was placed.

The plaintiff testified that the property in his wife's name belongs to him, was placed in her name in trust only and never belonged to his wife. The testimony and the documentary evidence disprove his contention.

During 1917, out of their savings, the plaintiff purchased at foreclosure premises No. 3349 Third avenue, adjoining their store, paying therefor the sum of $7,200, there being a first mortgage of $5,000 on the property, which was paid off within three years. This property was sold in the month of June, 1922. While not the subject-matter of this action, this sale is important in establishing the source of the funds thereafter invested.

The plaintiff made several bad investments in 1920 and 1921. He loaned $1,500 on property in Germany, taking back a second mortgage payable in German marks. This mortgage is now worth but $76. He purchased German marks for $5,000 and they are now worthless. He also loaned $4,000 to Dalby & Stegmeier, who were in the provision business and who had leased premises 341 East Eleventh street, which building they intended to alter into a loft building. Their business did not prosper, and plaintiff, in addition to the $4,000 loan, advanced their rent from time to time. A fire occurred in these premises, resulting in the three top floors of the building being destroyed. Plaintiff, realizing that his investment was at stake, arranged with the Lustbader Construction Company to "fix the building up," and he agreed to pay the rent while such work was going on. It was then discovered that there were certain fire violations on the premises, which because of existing encroachments, could not be remedied. The plaintiff then stopped paying rent on the building as well as further payments under his contract with the Lustbader Construction Company, but not until he had invested an additional sum of about $6,000 in the building. On plaintiff's failure to pay the Lustbader Construction Company, it started an action against him. The suit had not been actually instituted at the time when the premises No. 3349 Third avenue were sold in June, 1922. Plaintiff obtained a judgment against Dalby & Stegmeier for the $4,000 loaned, but the judgment proved worthless. The investments above adverted to totalled between $16,000 and $18,000, and were made against the advice of the defendant.

The defendant says that she naturally became very much alarmed when she realized that such a large part of their savings had been dissipated by poor investments made by the plaintiff. She felt that out of the remaining property, having in mind her hard work in the business with her husband in accumulating their money, some protection should be afforded her against want in her old age. She testified that she spoke to her husband as follows: "Q. Now go on with the conversation that you had with your husband at that time? A. Well, when all that money was gone, about eighteen thousand dollars, that was gone in about a couple of months' time — about a year or so, I got frightened, I talked to my husband, I said ' Well, I really want some protection, because I see the money we saved, and there is very little of anything left, I would like to have some protection for myself. I worked hard all them years and I think it is not more than right,' and he agreed with me to do so, so he says ' Well, if we sell that house, you take that money, you go up to Frey's office and get the money, he will give it to you.' "

Shortly after the premises No. 3349 Third avenue were sold, the defendant went to the office of Mr. Frey, the attorney for Mr. Schmitz, and received $10,500, the proceeds of the sale, the plaintiff having instructed Mr. Frey to turn this money over to his wife. With this money the defendant opened a bank account in the Commonwealth Bank, but because she was then not familiar with business matters, her husband having theretofore attended to all such matters, the account was opened in the name of " Maria Schmitz, by Emil Schmitz, Atty." After the defendant received this $10,500, she learned that premises No. 1142 Franklin avenue were for sale and arranged to purchase same, and attended at the office of the attorney and signed the contract of sale. Title was taken in her name on July 13, 1922. The cash paid was approximately $8,800, and came out of the defendant's account in the Commonwealth Bank. A purchase-money second mortgage for $6,000 was given back by the defendant. A few months later, in October, 1922, the defendant learned that the adjoining premises, No. 1144 Franklin avenue, were for sale, and she spoke to her husband about it. The defendant says he stated as follows: " Well, yes, he only wants $6,000 cash, you have some left, and I give you more money then you can get the $6,000, and you buy the two houses for yourself. That is yours then for your work you did in here, and you should hold them always."

The contract to purchase No. 1144 Franklin avenue was entered into and signed " Maria Schmitz by Emil Schmitz, Atty.; " title was closed on November 10, 1922, in the name of the defendant; and about $6,000 was paid in cash by defendant at the time of the

closing. This money consisted of the balance of the proceeds from the sale of No. 3349 Third avenue remaining in the Commonwealth Bank, which was approximately $1,700, to which was added the money which had been received by way of rents from No. 1142 Franklin avenue previously purchased by the defendant. Such further sum as was necessary to complete the required amount was given to defendant by her husband. A purchase-money second mortgage for $8,000 was given back by the defendant in this transaction.

The conversations above referred to, and particularly the second one, if true, clearly indicate that these two parcels of property which are the subject-matter of this action were the defendant's sole property, with both the legal and equitable title therein vested in her.

Between the time of the purchase of these two parcels of property on Franklin avenue and October 1, 1925, when the parties separated, the collection of the rents and various administrative details were undertaken by the plaintiff because of defendant's lack of experience. The mortgages on the two Franklin avenue houses were substantially reduced from the income received from those properties.

In June, 1925, the plaintiff visited his relatives in Germany and during his absence the coffee store and the two parcels of property were taken care of by the defendant. The defendant says that upon plaintiff's return she met him at the pier and his attitude toward her was decidedly cool. As a result, the defendant says she suffered a physical collapse and upon advice of her physician she went to Ulster county for a rest. While there the plaintiff informed defendant's nephew that he was tired of having a sick woman around the house and that when the defendant returned she had better look for rooms elsewhere and live separate and apart from him. The nephew told the defendant of his conversation with the plaintiff and accordingly defendant returned to New York and asked plaintiff about the matter. She was informed by him that he did not wish to live with her any longer, asserting as the reason for his determination that the defendant was a sick woman. He said: " Well, you cannot stay here much longer. I see you are a sick woman, * * * you better get rooms, you have an income, you have got your houses, they bring you a nice income, and I keep the store and I stay right here." He also stated: " You have your houses, you know they are yours and on your name, and I stay here, I have the bonds, I have eleven bonds, and I have the store. * * * I am satisfied, and you have yours, because we work together, we have no children, so we have equal. I lost all that money, * * * I admit that, that is my fault, let us go on, we have to forget about it."

The defendant testified that she attempted to persuade the plaintiff to reconsider his decision; that the plaintiff said, " that is just what I want and I don't want you ever to bother me, you can do as you like to, and even if I take somebody else in here, I don't want you to interfere in the work."

It is the defendant's contention that the plaintiff upon this separation, by his words, acts and conduct at that time, relinquished any and all equitable title in and to the property which he might then have considered he had, and that by such words, acts and conduct plaintiff again confirmed absolute title, both legal and equitable, in and to the two parcels of property in his wife, without any reservation to himself. The conduct of both the parties subsequent to the separation and up to the commencement of this action, *more than four and a half years thereafter*, conclusively shows that after the parties separated the plaintiff did not consider that he had any legal or equitable title in and to either of the houses on Franklin avenue.

After the parties separated, the defendant alone managed the two houses on Franklin avenue, collected the rents and paid the taxes, insurance, water and other carrying charges. She repaired and improved the property and paid for such improvements. She further reduced the existing purchase-money mortgage upon No. 1142 Franklin avenue from $4,500 to $2,500; and on No. 1144 Franklin avenue she paid off the entire mortgage. The plaintiff did not contribute anything toward the maintenance of the property nor for the defendant's support, and she saw him at infrequent intervals.

From the time of their separation in October, 1925, to April 29, 1930, when this action was commenced, a period of over four and a half years, the plaintiff took no affirmative action of any nature toward repossessing himself of the properties. It was not until after his personal investments had, because of the business depression, shrunk from $20,000 to a fraction of their original value, that he commenced this action to impress the trust and for an accounting, and filed the *lis pendens.*

The plaintiff's statements to the wholly disinterested witnesses Joseph Crimmins and Bertha McManus affirmatively established that plaintiff considered that he had transferred all interest in and to the property and that he considered both houses to be his wife's property.

A trust such as that sought to be here enforced can be established only by clear, unequivocal and convincing evidence, especially when parol evidence is relied upon.

In *Wormley* v. *Wormley* (98 Ill. 544) the court said: " The com-

plainant swears to one state of facts and the defendant to another and a different state of facts. If the title to land could be taken from one and transferred to another on such conflicting evidence, all security in titles to real estate would be at an end."

In *Crouse* v. *Frothingham* (97 N. Y. 105) the court held that if the declarations of a party can, under any circumstances, be received to raise a trust or create an interest in lands in another, they must be clear and explicit.

In *Conlon* v. *Mission of Immaculate Virgin* (39 Misc. 215; modfd. and affd., 84 App. Div. 507), where specific performance of an alleged oral agreement by a decedent to leave plaintiff, his widow, all of his property was sought, the court, in granting judgment for the defendants, said: " The proof rests entirely on the husband's declarations, and the testimony of plaintiff's witnesses is contradictory and improbable. So that instead of the agreement being established by the ' clearest and most convincing evidence,' the testimony adduced in support of the case is unreliable."

In *Goelz* v. *Goelz* (157 Ill. 33) the court said that the rule is well settled that where the evidence is doubtful, and not entirely clear and satisfactory, or is capable of reasonable explanation upon theories other than that of the existence of an implied or a resulting trust, such trust will not be held to be sufficiently established to entitle the beneficiary to a decree declaring and enforcing the trust.

In *Sloan* v. *Macartney* (58 Misc. 75), which was an action brought by heirs to impress certain real estate conveyed to defendants with a trust, the agreement relied upon was one of parol, the court refused, upon the evidence produced, to impress a trust, and wrote in part as follows: "Another most important circumstance cannot be overlooked in the disposition of this case, and that is that for ten years after the execution of the deeds in question, the title to the properties was permitted to remain in the defendant and her right and ownership in them remained apparently unchallenged. If it were the original purpose and intent of the grantors that the defendant should only remain the holder of the nominal title for the purpose of keeping the property from their creditors, with an agreement to reconvey, it seems strange that, after those dangers had long been passed, she should have been permitted without apparent protest to have continued to hold the property in her own name. The natural thing would have been for Mrs. Macartney to have procured a reconveyance of the properties. This was not done, and it tends to confirm the contention that no right to a reconveyance existed."

In *Diamond* v. *Talbot* (123 Misc. 339) Mr. Justice TAYLOR said:

" I have read with interest that portion of the learned brief of plaintiff's counsel, which is based upon the fine reasoning of Judge CARDOZO in *Sinclair* v. *Purdy* (235 N. Y. 245). I do not think, however, there is any evidence here of a promise by the defendant wife to convey the property to her husband, or of such an abuse of her confidential relation with him as would lead, without a writing, to the implication of a trust in favor of the defendant Frank Talbot, of the real estate in question."

There is no evidence in this case upon which any active or constructive fraud can be charged to the defendant, and under the rules of law and the cases above cited, plaintiff has wholly failed to sustain the burden of proof, the probabilities being with the defendant wife, as well as the equities in the case.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

FINCH, P. J., MERRELL, McAVOY and SHERMAN, JJ., concur.

Judgment reversed, with costs, and the complaint dismissed, with costs. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.