MOUNT and
WARDELL
v.
G.&R. WAITE.

MOUNT & WARDELL *against* G. & R. WAITE.

*A wager contract is void, if it is against the principles of public policy. The insurance of lottery tickets is against public policy, especially since the act of the 7th April, 1807, made to restrain the insurance of lottery tickets, declares it to be a public misdemeanor, to insure tickets in lotteries authorized by this state; and the act of the 17th February, 1809, has extended the provisions of that act to all lotteries whatever, foreign or domestic; and though the action was on an insurance of tickets in a foreign lottery, and made prior to the act of 17th Feb. 1809, (sess. 32. c. 36.) the contract was held to be void. But the insured not having violated any statute, was held not to stand in pari delicto; and therefore, entitled to recover back the premium paid for the insurance.*

THIS was an action of *assumpsit*. The declaration contained five counts. The first count stated that the defendants were joint partners, as *stationers* and *lottery-office keepers*, and used the trade of purchasing, selling and *insuring lottery tickets;* and that on the 27th *January*, 1808, a discourse was held between the plaintiffs and defendants, concerning a lottery, called the *Baltimore Grand Lottery*, and of and concerning the drawing of certain tickets, on the *thirteenth* day of the drawing of the said lottery, and it was then agreed by the defendants, that if the plaintiffs would pay to them 83 dollars and 33 cents, the defendants would pay to the plaintiffs 2,000 dollars, in case the ticket No. 167. in the said lottery, was drawn on the thirteenth day of the drawing; and the plaintiffs averred that they paid the defendants the sum of 83 dollars and 33 cents, and the defendants, in consideration thereof, assured and promised, &c. by reason whereof, &c.

The *second* count stated the same promise in writing.

The third count stated that a conversation, &c. and that the defendants agreed, that if the plaintiffs would pay to them 12 dollars and 50 cents, the defendants would pay to the plaintiffs 100 dollars on such and each of the tickets, No. 7,000, No. 8,000, and No. 9,000, in the said lottery, as should be drawn on the *thirteenth day* of the drawing of the said lottery; and the plaintiffs averred that they paid the defendants the sum of 12 dollars and 50 cents; and that the ticket No. 8,000 was drawn on that day. By reason whereof, &c.

The fourth count stated the promise to be in writing.

The fifth count was for money had and received to the use of the plaintiffs. Plea, *non assumpsit.*

The cause was tried before Mr. Justice *Spencer,* at the *New-York* sittings, the 13th of *April,* 1810.

At the trial, the plaintiffs proved the agreements and promises in writing, as stated in the second and fourth counts. A witness testified, that on the day the account of the tickets drawn in the lottery on the 13th day of drawing, arrived in *New-York,* one of the defendants told the witness that they, the defendants, had been *hit* by the plaintiffs, in the sum of 2,000 dollars, on No. 167. and in 100 dollars on No. 8,000, which tickets had come out on the 13th day of drawing the said lottery; and that the plaintiffs had called and demanded payment of the 2,000 dollars and the 100 dollars, but the defendants had refused to pay, and intended to resist payment.

A verdict was taken for the plaintiffs, by consent, subject to the opinion of the court, on a case containing the above facts.

*Griffen,* for the plaintiffs. This is an action for a wager. The laying the wager, and the loss, appear from the case. Is there any rule or principle of law which can prevent the recovery of the plaintiffs? The objection of illegality comes with an ill grace from the defendants, who are the authors of these insurances of lottery tickets. In *Bunn* v. *Riker,** it was admitted that an action at common law might be maintained for a wager, unless against the principles of public policy.

* 4 *Johns. Rep.* 436.

It cannot be said to come within the act to *prevent private lotteries,†* which declares that no person shall set on foot, carry on, &c. within this state, any lottery, game, or device of chance of any nature or kind whatsoever, &c. The words, game, or device of chance, are intended merely as descriptive of private lotteries, the

† 6th sess. c. 12,

object of the act, which was not intended as an act against gaming. The penal clause, which says that the person offending shall forfeit the whole amount " for which such *lottery* was made," shows that it had in view private lotteries only. The prohibitory cannot be considered more extensive than the *penal* clause. The other provisions of the act, and the words *prize, blank, drawing*, all refer to private lotteries.

It is not within the spirit of that act, nor of the decision in *Hunt* v. *Knickerbacker?* [*] The court merely decided that no action can be maintained on the sale of lottery tickets of another state. Nor is it within the 5th section of the act to *prevent horse racing*, &c. (25th sess. c. 4. s. 5.) which declares all contracts made, " for or on account of any sum or sums of money, or other thing bet or staked, depending on any such race or races, or for, or on account of any gaming by bet or chance of any kind, or under any description whatsoever, to be void in law." In common parlance the insurance of lottery tickets is not gaming.

In *England*, various statutes have been passed to prevent gaming, particularly those of the 16 *Car.* II. c. 7. and 9 *Ann.* c. 14.[†] which contain words equally general and comprehensive as any of our statutes. There have been various decisions in *England* since these statutes; and it has been held that a wager concerning the manner of playing was not within the statute, because it was a mere collateral matter, which happened on a mere chance, and did not depend on the success of the game; for had other wagers been intended, mention would have been made of them.[‡] In *Decosta* v. *Jones*,[§] Lord *Mansfield* said " that indifferent wagers upon indifferent matters were allowed, in so far as they have not been restrained by particular acts of parliament;" and where parliament interposes, " it implies, that in cases not specially prohibited, parties may wager or insure at pleasure."

ALBANY,
Feb. 1811.

MOUNT and
WARDELL
v.
G.&R. WAITE.

* 5 Johns. Rep. 327.

† 3 Bac. Abr. Gaming, (B). 14 Vin. Abr. Gaming, (B).

‡ Lutwyche, 487.
§ Cowp. 728, 734.

In *Good* v. *Elliot*,[*] *Grose*, J. said, actions for wagers had been innumerable, and that what was said by Lord *Mansfield* in *Decosta* v. *Jones*, was decisive; and he held the argument, that they were void as gaming contracts, and therefore against sound policy, not to be well founded.

ALBANY,
Feb. 1811.

MOUNT and
WARDELL
v.
G.&R.WAITE.

[*] 3 *Term Rep.*
693.

These decisions show that the words in the statute, "any gaming," &c. do not apply to wagers. An act was passed the 7th *April*, 1807,[†] to restrain the insurance of lottery tickets. If the acts relative to gaming extended to the insurance of tickets, then this act was unnecessary. Again, in *February*, 1809,[‡] another act was passed, extending the act of *April*, 1807, to the insurance of tickets in all lotteries whatsoever, public or private, foreign or domestic. These acts being passed *in pari materia*, should be taken together; and it is to be implied that, in the sense of the legislature, it was, before the passing of those acts, lawful to insure lottery tickets; for it cannot be supposed that the legislature would be so unreasonable as to make laws in cases already provided for, and which were idle and useless.

[†] Sess. 30. c.181.

[‡] Sess. 32. c. 36.

*Woods*, and *T. A. Emmet*, contra. If the defence set up by the defendants is legal, they have a right to it; and if the effect of it will be to destroy the business and occupation of the defendants, so much the better for the community.

We shall contend that this contract is void as against law, and public morality.

1. In *Hunt* v. *Knickerbacker*,[§] the sale of tickets in lotteries of other states was declared to be a public nuisance, and within the spirit of the act for the prevention of private lotteries. Surely this insurance can stand on no better foundation than an insurance of the lottery tickets of this state. The preamble to the act to prevent private lotteries, states that " private lotteries occasion idleness and dissipation, and have been pro-

[§] 5 *Johns. Rep.*
327.

ALBANY,
Feb. 1811.

MOUNT and
WARDELL
v.
G.&R.WAITE.

'ductive of frauds and impositions." Do not insurances of tickets produce the same mischiefs? The third sec- tion of the act declares, that if any person shall pur- chase any ticket in such lottery, or in any other way be- come *an adventurer therein*, he shall be punished. Does not a person who pays a *premium*, or *bonus*, for the in- surance of a prize in a lottery, become an adventurer in such lottery?

Again, the 5th section of the act to prevent horse- racing, &c. declares all contracts, &c. on account of any gaming by lot or chance of any kind, &c. void. Is not the insurance of lottery tickets gaming by lot or chance? In *Bunn* v. *Riker*, Mr. Justice *Van Ness* inclined to think that this act made all wagers illegal; though the court gave no decided opinion on the construction of the act. But, admitting that a wager on a contingent event is not gaming within the meaning of that act, yet a wager depending on a fortuitous event is a gaming by lot or chance. This is a wager policy of insurance, on a subject which has been declared to be a common nuisance. The supreme court of *Massachusetts** has decided, that a wager policy of insurance was illegal and void. The insurance of lottery tickets is much more deserving of condemnation than a contract found- ed on an innocent commercial adventure.

*\* 2 Tyng's Rep.*
*1. Amory v. Gil-*
*man.*

2. Suppose, however, that this species of insurance is not prohibited by statute, it does not follow that it is not void, as being against public policy. The practice of insuring lottery tickets was found to be an enormous public evil, and, on account of its immoral and perni- cious effect, the legislature passed those statutes. Doubts existed in the minds of some, as to the illegality of such contracts, and the legislature very wisely removed such doubts. What higher evidence can exist of this practice being against public policy than this legislative declaration? Though the defendants may not be liable to the penalties of the act of 1807, they are clearly with-

in the spirit and policy of that act. If insurances in the public and established lotteries of the state were illegal, as against public policy, the insurance of tickets in the lotteries of other states must be held to be equally against law and policy.

ALBANY,
Feb. 1811.

MOUNT and
WARDELL
v.
G.& R.WAITE.

3. The plaintiffs cannot be entitled to a return of premium in this case. In *Van Dyck* v. *Hewitt*,* it was held that the *premium* paid on an illegal insurance could not be recovered back. The maxim is, that where both parties are *in pari delicto, potior est conditio possidentis.* The same principle was laid down in *Morck and another* v. *Abel,*† by Lord *Alvanley*, in the common pleas.

* 1 *East*, 96.

† 3 *Bos. & Pull.* 35.

*Boyd*, in reply. After the solemn decisions in *England*, and in our courts, it is now too late to say that all wagers are illegal and void. If, then, this contract is not of itself void at common law, is it a contract against any statute, or the principles of public policy? The act of 1807 declares it shall be unlawful to insure; thereby, implicitly declaring, that before that time it was lawful. All the cases in the *English* courts, deciding wagers to be void, as against *public policy*, related either to courts of justice, the public affairs and concerns of the government, as its revenues, or public elections, &c. or such as concerned the feelings of private persons.‡ The statute of 29 *Geo.* III. c. 47. was passed to restrain and prohibit the insurance of lottery tickets. In *Jacques* v. *Golightly*,§ the court held, that the insurance of lottery tickets was not criminal, but was made void by statute; and that the *premium* paid, might, therefore, be recovered back. Suits have also been sustained, in *England*, to recover money fairly won at play, in cases not precisely within the statutes against gaming.¶ All our statutes about gaming, &c. are to be construed together, as one

‡ *Cowp.* 37. 2 *Term Rep.* 610. 1 *Term Rep.* 56.

§ 2 *W. Black.* 1073.

¶ 1 *Esp. Cas.*18. 235 2 *Str.* 1249. 2 *Burr.* 1078.

ALBANY,
Feb. 1811.

MOUNT and
WARDELL
v.
G.&R.WAITE.

\* Doug. 30. 1
Inst. 380. b.
Hard. 344. 1
Show. 108.
† 7 Term Rep.
535. 2 Esp Rep.
629. But see 1
East, 98.

law,\* and they clearly show the understanding of the legislature, that such insurances were not, in themselves, illegal.

The plaintiffs, at all events, are entitled to recover back the *premium*.†

KENT, Ch. J. delivered the opinion of the court. There are two questions arising upon this case. 1. Are the plaintiffs entitled to recover the sums insured? 2. Are they entitled to a return of the premium?

1. A wager contract is void, if it be against the principles of public policy, equally as if it contravened a positive law. This was so decided in the case of *Jones* v. *Randall*. (*Cowp.* 37.) And the contracts in question appear to me to be clearly within the mischief, and against the policy, indicated by the act of the 7th of *April*, 1807, made to restrain the insurance of lottery tickets. Without adverting to other considerations which were urged upon the argument, this objection is decisive. The statute declared it to be a public misdemeanor, " to insure for or against the drawing any ticket, or to receive any money in consideration of any agreement to repay any sum, if any such ticket should prove fortunate or unfortunate, or any other chance or event relative to the drawing of any such ticket, in any lottery authorized by law." The provisions in the statute do not reach this case, because the contract related to tickets in a *foreign* lottery; but the act of the 17th of *February*, 1809, extended the penalties and provisions of the act of 1807, to all lotteries, public or private, foreign as well as domestic. This last statute was subsequent to the making of the contracts before us, and therefore they are not within that statute. But can we say, after the passing of the first act, that these contracts were not against public policy? If it was a crime to make such a contract relative to

a ticket in a lottery authorized by law, could it be deemed fit and politic to uphold such a. contract relative to a ticket in an unauthorized lottery? I think not; and that, though the penalties of the act of 1807 do not apply to the case, so as to render the defendants indictable, yet the policy of the statute clearly applies, and ought to vacate the contract.

2. With respect to the return of premium, the *English* authorities differ widely. They are in direct contradiction to each other, and there does not appear to be any well settled rule on the subject. We are certainly at liberty to follow those decisions of which our judgment most approves. The plaintiffs here committed no crime in making the contract. They violated no statute, nor was the the contract *malum in se.* I think, therefore, the maxim as to parties *in pari delicto* does not apply, for the plaintiffs were not *in delicto.* We declare the contract void on principles of policy derived from the statute ; but it would be unconscientious for the defendants to retain the premium, and we promote justice by compelling them to refund it. If the plaintiffs in making the contract had shown depravity of character, by the immorality of the contract, or disobedience to law, by an attempt to evade or resist it, I should then have been inclined to deny any assistance to them in the recovery of the premium. The authorities that are in point in favour of the return of premium in this case, and which I choose to follow, are *Jacques* v. *Golightly*, (2 *Black. Rep.* 1073.) and *Lacansade* v. *White*, (7 *Term Rep.* 535.)

The opinion of the court. accordingly is, that the plaintiffs are entitled to the return of premium, and no more.

Judgment accordingly.