Millard L. Midonick, J.
The plaintiff sues the defendants for fraud and deceit alleging damages in the amount of $2,685. The trial and this opinion do not concern themselves with Marino, against whom a default judgment had been entered and whose case had been severed from that of the Golds.
The occasion for this opinion is a motion by the defendants Gold to set aside a verdict against them in the full amount of $2,685 and to dismiss the complaint against them as a matter of law. Even if it be assumed, argue the defendants Gold, that the jury properly found that these defendants were in fact responsible for the plaintiff’s loss of $2,685 in cash by deceitfully and fraudulently causing the plaintiff to give that money to Marino, nevertheless the plaintiff cannot recover because he knew of and participated in an illegal scheme in connection therewith.
This motion by the defendants presents an interesting and vexed problem of law. The courts have struggled with conflicting considerations of policy for hundreds of years in situations akin to the one here now. On the one hand, the courts are bent upon discouraging fraud and deceit by permitting such a recovery against defendants as this to the plaintiff here; on the other hand, if in the process of being defrauded, the plaintiff was knowingly participating in an illegal scheme, the courts have sometimes denied recovery to the plaintiff in order to discourage the illegality involved even though the fraud of defendants would remain unremedied.
The facts which the jury must have found in order to render a verdict for the plaintiff are as follows: The plaintiff is a lawyer, and the defendants Gold are business men who own their own business and were clients of the plaintiff. The defendants Gold initiated the suggestion to the plaintiff that the plaintiff could get a new General Motors automobile at a wholesale price through the efforts and contacts of the other defendant, Marino. Marino was truthfully represented to be a New York City business man who was vice-president of a substantial furniture company and who had direct contacts with General Motors officials in Detroit. The defendants Gold further truthfully represented that Marino had been obtaining various General Motors automobiles at approximately wholesale prices for the defendants Gold and their friends and relatives. The defendants Gold advised the plaintiff that Marino could obtain a new 1956 model Oldsmobile convertible with various accessories at the very attractive price of $2,685, provided that the plaintiff would put this sum of cash in the hands of Marino in advance.
*18 The only misrepresentation found by the jury was that the defendants Gold asserted that one of the Golds was ordering the same car as the plaintiff at the same time and for the same price. This representation was false in that one of the defendants Gold was promised or reasonably expected to be promised a deduction in the price for that Gold’s Oldsmobile of. approximately $85 if the plaintiff would participate in ordering such a car for himself and would give the sum therefor of $2,685 to Marino. Moreover, the said Gold had been promised or reasonably expected a further price deduction of several hundreds of dollars for recommending other car buyers. The jury found that, but for the Golds’ misrepresentation of their own financial disinterestedness, the plaintiff would not have handed cash in the sum of $2,685 to Marino. There was ample evidence of all of the "other elements of fraud and deceit on the part of the Golds to support the jury’s verdict, and there was ample evidence that Marino became insolvent some weeks after receiving the plaintiff’s money, and that the plaintiff has thereby been damaged in the entire amount.
The evidence of alleged illegality is based by defendants upon the plaintiff’s own testimony quoted by the defendants in their memorandum from the transcript of the testimony, as follows:
Q Well, weren’t you told at some time according to your previous testimony that Marino needs cash because he has to make payment to someone?
A Yes.
Q To a manager?
A Yes.
Q And didn’t it appear to you to be, if not dishonest, disloyal to the General Motors organization?
A It wouldn’t be dishonest.
Q It didn’t register?
A Dishonesty wouldn’t necessarily enter into the picture and disloyalty wouldn’t necessarily enter the picture as long as General Motors got paid the money due and owing to it; it wouldn’t matter.
Q Didn’t you testify that the reason for the cash was a payment had to be made to some official of General Motors ?
A Yes.
Q In order to get the car?
A That’s right.
Q You were told that?
A That’s right.
The plaintiff testified that the defendant George Gold told him that the General Motors “ manager makes a couple of dollars
*19 The defendants proceed to argue in their memorandum on the basis of the New York Penal Law as follows:
No matter how viewed, plaintiff’s testimony that cash was needed “to make payment to a manager ”, “to some official of General Motors ” and “ in order to get the car ” is susceptible of only one possible construction; namely that thereby he intended “ to influence such agents, employee’s or servant’s action in relation to his principal’s, employer’s or master’s business ” (Penal Law, § 439).
Plaintiff’s testimony on this point is undisputed and was unchallenged. It must, therefore, be given credence and effect; nor may plaintiff now impeach or contradict his own testimony.
The record, therefore, establishes that plaintiff made payment for the purpose of influencing an employee of another without the employer’s knowledge or consent and that this action is to recover such payment.
Defendants submit that plaintiff’s payment under these circumstances and for this purpose constitutes a violation of section 439 of the Penal Law. His claim was therefore barred and the complaint herein should have been dismissed.
Even assuming that the alleged illegality is to be determined on the basis of the law of the State of New York, either because the entire fraud took place within the State of New York or because in the absence of proof of the law of Michigan it is presumed to be the same as the law of New York, nonetheless the defendants’ motion to dismiss the complaint on the ground of the alleged illegality in the conduct of all the parties, must fail. The following considerations govern this denial of the defendants’ motion to dismiss, these considerations operating both separately and in combination:
1. Illegality must be pleaded as an affirmative defense in this situation, and this the defendants have not done.
2. If it be assumed that there was involved an illegal transaction, the illegality was at most malum prohibitum rather than malum in se; consequently, the plaintiff must be more than a participant in the illegality'in the sense of knowing about the possibility of such illegality (particeps criminis), but rather the plaintiff must be equally guilty with the defendants Gold, and perhaps also with the defendant Marino (in pari delicto).
3. At the most, the defendants Gold would have been entitled to an express charge to the jury that the question of whether the plaintiff was in fact in pari delicto was a question of fact for the jury to decide. No such charge was requested; contrariwise, counsel for the defendants Gold expressed himself as satisfied with the charge as delivered to the jury and the jury *20 had under consideration the very evidence quoted by the defendants Gold, despite which the jury rendered its verdict for the plaintiff.
4. The burden of proof of alleged illegality is upon the defendants, and this burden was not in fact sustained.
The four numbered considerations will be discussed separately.
1. Illegality must be pleaded as an affirmative defense in this situation, and this the defendants have not done.
The defendants Gold moved to dismiss the complaint at the conclusion of the plaintiff’s case on the ground of illegality although no affirmative defense is alleged in the answer. Section 242 of the Civil Practice Act provides: ‘ ‘ The defendant * * * shall raise by his pleading all matters which show the action * * * not to be maintainable, * * * and all such grounds of defense * * * which if not raised would be likely to take the opposite party by surprise or would raise issues of fact not arising out of the preceding pleadings, as, for instance * * * facts showing illegality either by statute, common law or statute of frauds.”
The defendants Gold assert that they were themselves surprised by the plaintiff’s testimony and that therefore they had no opportunity to plead the defense of illegality. This argument cannot be accepted because the plaintiff’s testimony, even if capable of the interpretation sought to be placed upon it by the defendants Gold, was testimony concerning a conversation with one of the Golds himself in which one of the Golds was supposed to have described the alleged illegal scheme. It follows, therefore, that the defendants Gold were cognizant of the situation from the beginning and should have raised this defense expressly in their pleadings.
2. If it be assumed that there was involved an illegal transaction, the illegality was at most malum prohibitum rather than malum in se; consequently, the plaintiff must be more than a participant in the illegality in the sense of knowing about the possibility of such illegality (particeps criminis), but rather the plaintiff must be equally guilty with the defendants Gold, and perhaps also with the defendant Marino (in pari delicto).
The classic instances where the defendants’ defense of illegality is applied involve those cases where a plaintiff makes an illegal assignment to a defendant of property in order to defraud creditors of the plaintiff. These cases hold that the plaintiff cannot compel reassignment to himself from the defendant even though the defendant may be unjustly enriched. (Nellis v. Clark, 4 Hill 424; Saratoga County Bank v. King, 44 N. Y. 87; Knowlton v. Congress & Empire Spring Co., 57 N. Y. 518; *21 Materne v. Horowitz, 101 N. Y. 469; Haynes v. Rudd, 102 N. Y. 372; Robertson v. Sayre, 134 N. Y. 97; Dressel v. Hanser, 101 Misc. 574.)
Even in these situations, the defrauded or bilked plaintiff is granted relief against the defrauding grantee, despite the common plan of both of them to defraud creditors of the plaintiff, where the plaintiff was found either actually or by force of legal presumption to be influenced by the defendant, who was the plaintiff’s own lawyer or business advisor. (Ford v. Harrington, 16 N. Y. 285; Freelove v. Cole, 41 Barb. 318, affd. without opinion 41 N. Y. 619; Fisher v. Bishop, 108 N. Y. 25; Place v. Hayward, 117 N. Y. 487.) And the courts have granted relief to a plaintiff in a similar situation where the plaintiff is the wife and her mind has been influenced to make such a transfer in defraud of creditors by the defendant husband. (Boyd v. De La Montagnie, 73 N. Y. 498; Ingersoll v. Weld, 103 App. Div. 554; Watkins v. Jones, 78 Hun 496.)
The latter line of cases illustrates one of the exceptions to the general doctrine that illegality is a defense in an action in fraud and deceit. Those cases can be explained on the basis that where a defendant occupies a superior position to the plaintiff either as lawyer, business advisor or husband, the plaintiff is not in pari delicto with the defendant even though both are participating in a fraud against creditors or other third persons. Another illustration of the exception in favor of the plaintiff who is not in pari delicto with the defendant, is' the case of Tracy v. Talmage (14 1ST. Y. 162). In that case, an illegal contract was made between the plaintiff who sold stock to the defendant banking corporation for which the plaintiff received notes payable on time; these notes the defendant banking corporation was prohibited from issuing under a penalty imposed by statute. The plaintiff was nevertheless permitted to recover upon an implied contract founded upon the obligation resting upon the defendant to pay for the property received. The court stated, at pages 176-177: “ I consider it, therefore, as entirely settled by the authorities to which I have referred, that it is no defence to an action brought to recover the price of goods sold, that the vendor knew that they were bought for an illegal purpose, provided it is not made a part of the contract that they shall be used for that purpose; and, provided also, that the vendor has done nothing in aid or furtherance of the unlawful design. If, in this case, the bank had had no right to purchase state stocks for any purpose, then the contract of sale would have been necessarily illegal, and the vendor would, perhaps, be precluded from all remedy for the purchase money. *22 But here the purchase and sale for a lawful object was a contract which each party had a perfect right to make. Suppose the banking company, although intending at the time of the purchase to use the stocks for trading purposes, had, the next day, abandoned this intention and deposited them with the comptroller; would this change of purpose reflect back upon the contract of purchase, if it was corrupt, and divest it of its illegal taint? This could hardly be pretended; and, if not, then the consequence of the doctrine contended for here, would inevitably be, that the vendor of the stocks, without having participated in any illegal act, or even illegal intent, but having simply known of such an intent subsequently abandoned, would be punished with a total loss of the property sold, and that for the benefit of the party alone guilty, if guilt could be predicated on such a transaction.” And again at pages 185 to 186 the court stated: “Again, in the case of Lowell v. Boston and Lowell Railroad Company (23 Pick., 24), where the objection was raised that the parties were particeps criminis, the same justice says: ‘ In respect to offences in which is involved any moral delinquency or turpitude, all parties are deemed equally guilty, and courts will not inquire into their relative guilt. But where the offence is merely malum prohibitum, and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to administer justice between them, although both parties are wrongdoers.’ The same doctrine was reiterated in Atlas Bank v. Nahant Bank (3 Met., 581). The principle of these cases was also adopted by our own supreme court in the case Mount v. Waite (7 John., 434). The action was to recover back money which the plaintiffs had paid to the defendants for insuring lottery tickets contrary to the policy of a statute passed in 1807. Kent, Ch. J., says: ‘ The plaintiffs here committed no crime in making the contract. They violated no statute, nor was the contract malum in se. I think, therefore, the maxim as to parties in pari delicto does not apply, for the plaintffs were not in delicto.’ ”
In Furman v. Furman (178 Misc. 582, affd. 262 App. Div. 512, affd. without opinion 287 N. Y. 772) the plaintiff sued his wife in an action at law for money had and received and converted to her own use. The complaint indicated that the plaintiff’s money was placed in various bank accounts under fictitious names by the wife at the plaintiff’s request in order to place these moneys beyond the reach of creditors of the plaintiff. The complaint further alleged that the wife had withdrawn these moneys for her own use. Mr. Justice Shiektag dismissed the *23 complaint merely on the ground that the cause of action was res judicata by virtue of decision for the defendant on the facts in a previous equity suit for an accounting involving the same issues of fact. In the course of his opinion, however, Mr. Justice Shiextag indicated that there is very slight distinction between the doctrine of clean hands in equity and the doctrine of pari delicto used as a defense in actions at law. Under similar circumstances, in equity as at law, the plaintiff obtains relief if his fault is less than the fault of the defendant,
3. At the most, the defendants Gold would have been entitled to an express charge to the jury that the question of whether the plaintiff was in fact in pari delicto was a question of fact for the jury to decide. No such charge was requested; contrariwise, counsel for the defendants Gold expressed himself as satisfied with the charge as delivered to the jury and the jury had under consideration the very evidence quoted by the defendants Gold, despite which the jury rendered its verdict for the plaintiff.
In Duval v. Wellman (124 N. Y. 156) the plaintiff woman paid to the defendant under an illegal contract the sum of $50 so that the defendant would introduce her to men for the purpose of finding her a husband. The court ruled that the defendant was engaged in an illegal business of acting as a marriage broker. By the terms of the contract the $50 was recoverable if the plaintiff should give up all of the acquaintances to whom she was introduced by the defendant. The court stated (p. 158): “But whether the cause of action was based upon the contract, or upon the illegality of the contract, and in disaffirmance thereof, does not appear.”
The court held (p. 162):
“ Contracts of this sort are considered as fraudulent in their character and parties who pay money for the purpose of procuring a husband or wife will be regarded as under a species of imposition or undue influence.
“ The subject is classed by all text writers under the head of constructive or implied fraud, and it is upon the application of rules which belong to that branch of the law that the cases have been decided to which I have referred.
“ We are of the opinion, therefore, that it was error to hold as a legal conclusion that the parties to the contract in question were equal in guilt.
“ The learned General Term of the Common Pleas appeared to have considered that the voluntary character of Mrs. Guión’s acts was decisive of this question and deprived her of the right of recovery.
*24 “It is true there is no evidence of actual over-persuasion or undue influence.
“ But at most the inferences to be drawn from these facts were for the jury.
“ The prominent fact in the case is that such a place as the defendant maintained existed in the community with its evil surroundings and immoral tendencies.
“ What influence was exerted upon the mind of the widow by the mere fact of the existence of such a place to which resort could be had, cannot of course appear except by inference. But if the evidence was not sufficiently strong to authorise the court to hold as a question of law that the parties were not in pari delicto it at least presented a question of mixed fact and law for the jury.
“ Our opinion is that the same reasons that have induced courts to declare" contracts for the promotion of marriage void, dictate with equal force that they should be set aside and the parties restored to their original position. To decide that money could not be recovered back would be to establish the rules by which the defendant and others of the same ilk could ply their trade and secure themselves in the fruits of their illegal transactions.” (Italics added.)
It is equally a matter of forceful argument here, that if the defendants Gold be permitted to escape the consequences of their fraud, that a much greater mischief will be done. Let it once be known that a fraud doer can escape the consequences of his fraud by insinuating into his remarks to the defrauded person some vague element of ultimate illegality, there would be no way in which to protect defrauded persons.
To establish a rule contended for by the defendants Gold would make it quite simple for wrongdoers to protect themselves from the consequences of their own frauds merely by indicating to the intended victim that some illegality might be involved a step or two steps removed from the immediate transaction.
4. The burden of proof of alleged illegality is upon the defendants, and this burden was not in fact sustained.
Even if the jury may properly have considered as though on express pleadings the evidence of illegality presented to it by the testimony, the burden of proof was most definitely on the defendants Gold to convince the jury that the plaintiff’s testimony should be construed as a description of an illegal plan. In effect, the jury did not so construe it inasmuch as they found for the plaintiff despite the evidence. No request was made that the court expressly charge that the jury may find that illegality bar the plaintiff’s recovery for fraud and deceit.
*25 In Kremer v. Kremer (51 N. Y. S. 2d 394, affd. without opinion 269 App. Div. 827) Mr. Justice Cohalax makes it abundantly clear that where a defense such as the defendants Gold contend for in this case is relied upon, it is necessary for the defendants to prove that the alleged bribery or illegality practiced upon the General Motors Corporation has actually been consummated. There was no such proof in this case in any way. Consequently, under this doctrine an express charge to the jury might have been improper for there was no evidence of consummation of a bribe to influence the employee of General Motors.
To the same effect is the principle announced by the Court of Appeals in Tracy v. Talmage (14 N. Y. 162), discussed above. The Court of Appeals there stated at page 177: “The law does not punish a wrongful intent, when nothing is done to carry that intent into effect; much less, bare knowledge of such an intent, without any participation in it. Upon the whole, I think it clear, in reason as well as upon authority, that in a case like this, where the sale is not necessarily per se a violation of law, unless the unlawful purpose enters into and forms a part of the contract of sale, the vendee cannot set up his own illegal intent in bar of an action for the purchase money. ’ ’
It has also been held in Tiedemann v. Tiedemann (201 App. Div. 614, affd. without opinion 236 N. Y. 534) that it is necessary to prove that an actual fraud was in fact perpetrated by the plaintiff and defendant before the plaintiff will be denied recovery in an unjust enrichment of the defendant. In that case the plaintiff sued in equity against his wife and his wife’s assignees of a piece of real property. The court affirmed the decision that the plaintiff is the owner of the property he had placed in the defendant wife’s name and which she had conveyed to another defendant. The court upheld the cancelling of the conveyance by the defendant wife to the other defendant, and the court upheld the injunction to the defendant wife to convey this property to the plaintiff. The proof indicated that the plaintiff feared a possible lawsuit for negligence in the death of a boy who was riding in the plaintiff’s vehicle when it was struck by a railroad car, and that the fear of this lawsuit was what might have motivated the plaintiff to put his property in the name of his wife. The court pointed out that the possible negligence suit against the plaintiff never eventuated, that the plaintiff denied that he was negligent in the death of the boy, and that the plaintiff was solvent in any event even without this property. The court therefore concluded that *26 there was no real debt, or, if there were one, that there was no proof that the plaintiff was seeking to avoid it. Consequently, while there may have been a potential fraud by the plaintiff’s conveyance, without the proof of an actual fraud upon creditors, the plaintiff was permitted to recover.
This principle is equally applicable where the defendant is guilty of fraud, rather than of unjust enrichment by reason of the holding of moneys or property paid under an unenforcible contract or conveyed or assigned without consideration upon expectation of reconveyance.
It should be borne in mind that all of these qualifications to the defense of illegality, including the qualification that the consummation of the illegality must be proved, seem to apply only in cases involving an illegality which is malum prohibitum. If the illegality is so morally reprehensible as to be malum in se, the mere planning of such a crime and payment therefor by the plaintiff may be sufficient without more to deny recovery to the defrauded plaintiff.
Finally, there is serious doubt whether there is sufficient proof of even a planned and unconsummated illegality. The jury may not have been warranted in finding such a defense of illegality established in view of the insufficiency of the evidence. There was no proof by any eyewitness that there was actually a manager or other employee of General Motors who was apprised of the plan to give him money for his own use, or who would in fact take such money for his own use.
Nor was it proved, if it be assumed that such an employee would accept such money, that he had anything to do with the proposed sale of a motor car to the plaintiff. Thus, a contract has been held enforcible although the plaintiff had agreed to pay a bribe to one of the defendant’s employees as to whom there was no evidence to indicate that such bribed employee “ had a thing to do with the making of the contract or that he influenced in any way the execution thereof.” (Merchants’ Line v. Baltimore & Ohio R. R. Co., 222 N. Y. 344, 346.) Marino, who was supposed to be the negotiator with General Motors, was not called as a witness, nor did either of the defendants Gold, who were supposedly describing Marino’s method of operation, testify as to his personal knowledge of any alleged illegality. There was no evidence whatsoever of knowledge of any illegality — merely a hearsay statement by plaintiff as to what the defendant George Gold had told him. For all that appears, even George Gold may have been repeating hearsay from Marino. George Gold did not explain or testify concerning this allegedly illegal plan. The *27 testimony by the plaintiff about what one of the defendants Gold told him concerning alleged facts apparently not within the knowledge of either of them, cannot be considered as evidence of such alleged facts. Such testimony by the plaintiff may have had some bearing upon the credibility of the plaintiff as a witness, but it could be no foundation for a finding as to the fact of the alleged illegality. Such testimony of the plaintiff indicated his awareness of the alleged illegality, if the illegality were to have been proved in fact. No such fact was proved. Consequently, neither the plaintiff nor these two defendants were proved to have been in delicto at all.
The motion of defendants Gold is therefore denied and judgment shall be entered for the plaintiff against the defendants Gold for the amount of the verdict of $2,685 with interest from September 13, 1955.